JOHN JACOB ASTOR and Others, Appellants, *v.* THE NEW YORK ARCADE RAILWAY COMPANY, Respondent.

*Underground railroad in New York city — construction of acts authorizing it — requirement as to proof of financial capacity — acceptance of franchises presumed — constitutional law — as to laying down railroad tracks — as to exclusive privilege, immunity or franchise — as to waiver of forfeiture of franchises.*

The plaintiffs, who are the owners of property fronting upon Broadway and Madison avenue, in New York city, brought this action to prevent the construction of an underground passage-way and lines of railway under the surface of these streets, alleging in the complaint such ownership, and that the defendant had acquired no legal right to lay or operate the railroad tracks under the surface of such streets, and had failed to comply with the provisions of the statute under which such rights were claimed by it to exist; and asking that the defendant be enjoined from further proceeding in the execution of such work.

It appeared that the defendant was created by chapter 842 of the Laws of 1868, entitled "An act to provide for the transmission of letters, packages and merchandise in the cities of New York and Brooklyn, and across the North and East rivers, by means of pneumatic tubes to be constructed beneath the surface of the streets and public places in said cities, and under the waters of said rivers." It was objected that the title of the act was insufficient, under section 16 of article 3 of the Constitution, declaring that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title," in that this act authorized the formation of a corporation under the mining and manufacturing laws, in addition to providing for the construction of the pneumatic tubes, and carrying on through them the business mentioned in the statute.

*Held,* that as the provisions objected to afforded a means by which the rights and privileges conferred could be more effectually and completely secured and maintained, the title, being expressive of the general object to be attained, was sufficient to include what was appropriate to that end, and was a compliance with what this section of the Constitution required.

By chapter 185 of the Laws of 1873, the corporation was authorized to construct, maintain and operate an underground railway for the transportation of passengers and property. It was objected, to the application of this act, that there was no evidence that the corporation had accepted its provisions.

*Held,* that where an act, such as this, was enacted for the benefit of the corporation, that it must be proved that it had refused to accept the proffered benefit, or the presumption would be, in the absence of such proof, that it had accepted it.

By chapter 312 of the Laws of 1886, a further extension of the excavation to the width of forty-four feet was authorized.

It was also objected that this act of 1886 was in violation of the amendment made to the Constitution, which took effect in 1875, forbidding the legislature, by special act, to grant to any corporation, association or individual, the right to lay down railroad tracks, or to grant to any private corporation any exclusive privilege, immunity or franchise.

*Held,* that this objection could not be sustained, as the act of 1886 was confined in its provisions to the railways authorized to be constructed under the preceding and existing laws of the State; and the act of 1873, not having restricted the company to any particular number of tracks, that the act of 1886 was not in violation of the aforesaid provision of the Constitution.

That the fact that the act of 1886 conferred additional privileges in the way of enlarged dimensions for the laying down and operating of the railway tracks previously authorized, did not bring it within the restrictions imposed by the aforesaid provision of the Constitution.

That the act of 1886 did not grant to the corporation any exclusive privilege immunity or franchise, as it reserved to the legislature the power to repeal or amend it, the existence of which power was inconsistent with the existence of an exclusive right or privilege to the corporation.

That the fact that the exercise of the authority contained in the act might be attended with the exclusion of other corporations or individuals from the enjoyment of the same privileges, while they were enjoyed by the defendant, was not a violation of this constitutional provision.

That, assuming that the act of 1886 waived a forfeiture of the corporate rights of the defendant, arising out of this neglect to construct and put in operation the portions of its road required to be constructed within the periods of time specified in the previous laws relating to this company, that such waiver was simply a surrender by the sovereign of its rights to claim the forfeiture, and gave no new substantial rights; simply extending the time within which rights previously granted could be exercised.

The complaint averred that the statutes under which the defendant claimed to act had not been complied with, in that no proof had been made to certain engineer-commissioners, referred to in said statutes, that the company had made any financial arrangements to insure the completion of so much of the work as was mentioned in the acts authorizing it; that no certificate had been made to that effect by the board of engineer-commissioners; and that the engineer-commissioners were further restricted from making the certificate until the company should have at least $3,000,000 in its treasury applicable to the work of the construction of its railways.

*Held*, that as the aforesaid acts showed the intention to be that the work of con-
structing the railway should not be commenced until the certificate above
referred to should have been obtained and filed, that by reason of the failure of
the defendant to make the required proof and obtain and file this certificate,
admitted by its demurrer to the complaint herein, it was shown to have been so
far in default as to have no right, at the time when this suit was commenced,
to begin the work or lay down its railway.

APPEAL from an interlocutory judgment sustaining a demurrer
interposed by the defendant to the plaintiffs' complaint, dismissing
the complaint, with costs.

*Noah Davis*, *John F. Dillon*, *A. P. & W. Man*, and *Joseph S.
Auerbach*, for the appellants.

*Charles P. Daly*, *Edward B. Thomas*, *Robert Sewell* and
*Benjamin F. Dunning*, for the respondent.

DANIELS, J.:

The plaintiffs are the owners of valuable property fronting upon
Broadway and Madison avenue, in the city of New York, and as
such owners they have brought this action to prevent the construc-
tion of an underground passageway and lines of railway under the
surface of Broadway and Madison avenue. In support of their right
to maintain the action, it has been alleged in the complaint that they
are the owners or entitled to the enjoyment of easements dependent
upon the preservation and maintenance of Broadway and Madison
avenue as public streets for the convenient use and enjoyment of
their property. And that they are so entitled follows from what
has been decided in *Lahr* v. *Metropolitan Elevated Company* (104
N. Y., 269). It has been further alleged that vaults have been con-
structed under the sidewalks in front of their respective lands, and
valuable and costly buildings have been placed upon the lands them-
selves, which will be disturbed, rendered insecure, and the vaults at
least partly destroyed by the excavation required for the construction
and operation of the defendant's railway; and that the defendant
proposes and threatens to enter upon and prosecute this work, which
would not fail to result in irreparable loss, damage and injury to the
plaintiff's property. In further support of the action, it has been
charged by the complaint that the defendant has acquired no legal
right to make this excavation, or lay or operate railway tracks in it,

under the surface of these streets; and that it has failed to comply with the provisions of the statutes under which such rights are claimed by the defendant. To prevent the apprehended injuries and the performance of the alleged illegal work, the plaintiffs, by their complaint, have prayed for an injunction restraining these threatened proceedings on the part of the defendant. To this complaint, containing these and other allegations which it will be necessary to notice hereafter, the defendant interposed a demurrer, stating in support of it that there was a misjoinder of parties plaintiff in the action, and that it did not appear from the complaint that facts existed sufficient to constitute a cause of action. The court at the trial sustained the demurrer upon the last ground mentioned in it, and the judgment in this manner sustaining it has been brought in controversy upon the argument of this appeal. That there is a misjoinder of plaintiffs has not been insisted upon by way of supporting the judgment, but it has been strenuously urged and elaborately argued that the complaint itself does not state facts sufficient to constitute a cause of action. And that is the objection which must, in its present condition, be considered for the disposition of the case.

The origin of the defendant's existence as a corporation is chapter 842 of the Laws of 1868. That act authorized and empowered the persons named in it to lay down, construct and maintain one or more pneumatic tubes in the soil, beneath the streets, squares, avenues and public places of the cities of New York and Brooklyn, and under the bed of the waters of the East river, between said cities, and also under the bed of the waters of the North river, from the city of New York to the shore of New Jersey, at such a depth as not to interfere with navigation, and "to convey letters, parcels, packages, mails, merchandise and property in and through said tubes for compensation, by means of vehicles to be run and operated therein by the pneumatic system of propulsion." Further and additional privileges were conferred upon the associates, but only for the purpose of promoting the success of the enterprise in this manner described. In that enterprise authority was given to construct the pneumatic tubes of an interior diameter not exceeding fifty-four inches. The act further provided for a meeting of the associates within thirty days after its passage, and, in case they so

determined, authorized them to organize themselves into a corporation in the manner required by the general law authorizing the formation of corporations for manufacturing, mining, mechanical or chemical purposes. This act is entitled, "An act to provide for the transmission of letters, packages and merchandise in the cities of New York and Brooklyn, and across the North and East rivers, by means of pneumatic tubes, to be constructed beneath the surface of the streets and public places in said cities, and under the waters of said rivers." And that has been objected to as insufficient to comply with section 16 of article 3 of the Constitution of the State, declaring that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." The precise objection presented to the act for this purpose is, that it has authorized the formation of a corporation under the mining and manufacturing laws in addition to providing for the construction of the tubes and carrying on the business through them mentioned in the statute. But the object of the provision, allowing the associates in this manner to form a corporation, was more effectually to secure to them the enjoyment of the other provisions of the act. It was a means by which the rights and privileges conferred could be more effectually and completely secured and maintained. It was by no means an inappropriate agency for constructing the tunnels and carrying on the business authorized and sanctioned by the other sections of the act. And where that is the fact the title itself, expressive of the general object to be attained, will be sufficient to include what will be appropriate to that, and a compliance with what this section of the Constitution has required. (*Matter of Orphan Home*, 92 N. Y., 116, 120.) *Matter of Knaust* (101 N. Y., 188), where the court held that it must now be considered as the settled rule of construction that where the title expresses a general object, "all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title." (Id., 194.) And, within this rule of construction, it was no violation of this article of the Constitution after providing, by this act, for the construction of the tubes and the business to be carried on through them, further to permit the associates to do that through the instrumentality of a corporation under those

general laws. The business of the corporation was intended to be that provided for by the preceding sections of the act, and not a different or distinct business as that instanced by way of example in the course of the argument by the formation of a corporation for the performance of banking business. Such a corporation would be entirely inappropriate to the attainment of the objects designed to be secured, while the corporation formed under the mining and manufacturing laws could very well be invested with powers adapted to the principal and controlling object of the law of 1868. And in the certificate of incorporation afterwards filed by the associates pursuant to this authority, the powers of the corporation were in this manner restricted and limited.

This act was amended by chapter 512 of the Laws of 1869, but in no essential respect materially differing from the act of 1868. The object of the amendments was more completely to carry the provisions of the earlier act into effect, but the business provided for and the manner in which it might be transacted still remained the same, and was not enlarged or extended by the amendatory act. It was no part of these acts either directly or indirectly to authorize or empower a corporation to be formed, and which actually was attempted to be formed, to lay down or operate a railway under either of the streets or avenues of the city.

The first expression of any intention on the part of the legislature that either the associates or the corporation formed by them might construct and operate a railway under either of the streets is contained in chapter 185 of the Laws of 1873. That act declared that it should be lawful for this corporation, which had then been organized under the name of the Beach Pneumatic Transit Company, " to construct, maintain and operate an underground railway for the transportation of passengers and property in the city of New York, extending from the Battery or Bowling Green under Broadway to Madison Square; thence under Broadway to its junction with Central Park and Eighth avenue with a branch railway from and under Madison Square, under Madison avenue to Harlem river, and across and under the bed of said river to the northerly shore thereof, by means of tubes of enlarged interior diameter, sufficient for the construction of a railway or railways therein, and for the running of cars and the carrying of passengers therein; and also to construct,

in connection with said tubes, two or more tracks of railway, with the necessary turn-outs and stations for the ingress and egress and accommodation of passengers, and for the receipt and discharge of packages and freight." This was the source of the right claimed by the defendant to construct, maintain and carry on a railway for the carriage and transportation of passengers. It was a new and substantial right or privilege in no way included in those before conferred upon the associates or the corporation. And no allusion whatever to the creation of this right is contained in the title of the act, but no objection has been taken on the argument to the sufficiency of the title for this purpose. And whether it is so or not, for that reason should not be considered in the disposition of this appeal. (*People* v. *Brooklyn, etc., Railway Co.*, 89 N. Y., 75.) But this act has been resisted as conferring no authority upon the corporation to construct and maintain railways for these and other objects on the ground that it was such an enlargement of and addition to the purposes of the corporation as to be inoperative without an acceptance of its provisions by the corporation. And where an act proposes a benefit to an incorporated company, not previously possessed by it, the company is at liberty to accept or reject the additional privileges as it may elect to do. (*Clarkson* v. *Hudson River R. R. Co.*, 2 Kern., 304; *Johnson* v. *Hudson River R. R. Co.*, 49 N. Y., 455.) As to the legal rule affecting this subject there seems to be no ground for dispute or misunderstanding.

But before it can be applied there should be evidence of the fact in some form that the proposed benefit, or additional privilege, has not been accepted, for the presumption would not be, where an act, as this one, was enacted was for the benefit of a corporation, that it failed to accept the proffered benefit. The complaint in this action contains no allegation of such failure, but, on the other hand, by its second subdivision, it has been alleged that the defendant, whose name was from time to time changed until it was denominated the New York Arcade Railway Company, " claims to be an existing corporation by virtue of and under the provisions of the several statutes of the State of New York, known as chapter 842 of the Laws of 1868, chapter 512 of the Laws of 1869, and chapter 185 of the Laws of 1873," etc. And from the fact, so alleged, which is admitted by the defendant's demurrer, it may be presumed that the

act of 1873 had been accepted by the defendant, as it was enacted by the legislature, as well as the other acts mentioned in this part of the complaint. Beyond that it has not been averred in the complaint that the defendant was deprived of the benefit of this act by any omission to accept its provisions, but the averments, as to its inability to stand upon the provisions of this act, are that it has failed to construct the portion of the railways required in the first instance to be constructed within the time mentioned in the act. That time has been asserted to be conditional, and that the company had failed to perform the condition, and had, therefore, deprived itself of the right to insist upon its title to the privileges mentioned in the act of 1873. And under these averments the objection cannot be maintained that the act became inoperative because of a failure of the company to accept its provisions.

This act, by its second section, permitted no greater excavation of the street or avenue to be made than for a space of thirty-one feet in width by eighteen feet in height, exterior measurement, and prohibited the outer walls of the tubes to approach within two feet of the curb line, or within eighteen feet of the building line of the streets. By chapter 503 of the Laws of 1874 this excavation was permitted to be so far enlarged as to allow the company to construct its tunnels and railways one foot larger than had been in this manner provided. And by chapter 312 of the Laws of 1886 a further extension of the excavation was permitted to the width of forty-four feet, inside measurement, and of the necessary depth, and the other restrictive prohibitions of the act of 1873 were in this enactment excluded. This act of 1886 has been made the subject of special objection because of the increased privileges provided for by it for the company. A prominent objection urged against it is that, being a private and local act, it violated the amendments made to the Constitution, taking effect in 1875, forbidding the legislature, by special act, to grant to any corporation, association, or individual, the right to lay down railroad tracks, or to grant to any private corporation, etc., any exclusive privilege, immunity or franchise whatever. The first of these objections seems to be answered by the fact that the act of 1886 does not authorize the laying down of any railway track, except the switches mentioned in section 9, but

has confined its provisions to the railways nominally authorized to be constructed under the preceding and existing laws of the State. This reference was, without doubt, intended to include the act of 1873, which does not restrict the company to any number of tracks, except in constructing what was there described as the first section of the work. And in constructing that section it was required only to complete two railway tracks; but by the first section of the act the company was, in general terms, authorized to construct and maintain two or more tracks of railway. And this act of 1886, by its provisions, conferred only additional privileges in the way of enlarged dimensions for the laying down and operating the railway tracks, previously authorized. By section 1 the tracks are designated as "its authorized railways;" and by section 2 it is added that "nothing in this section or act shall be construed to extend or change the location of such company's line, as heretofore authorized." And by section 4 the company has been empowered to excavate for and construct a space for its authorized railways to the width of forty-four feet, inside measurement."

In this respect the act seems to have been guarded against such an extension of the defendant's rights or privileges, as would allow it to add to the railways permitted by the act of 1873. And being framed in this manner it is not obnoxious to the objection that it violates the prohibition of the amendment of the Constitution, which went into effect in 1875, forbidding the legislature by a special act to grant to any corporation the right to lay down railroad tracks. And such legislation as is contained in this act of 1886 was in general terms approved in *Matter of New York Elevated Railroad Company* (70 N. Y., 327), where it was held that these constitutional provisions do not prohibit a private or local bill to amend the charter of a private corporation by regulating the powers, rights, privileges and franchises which it previously possessed. "Such a bill may not be passed to give to an existing corporation any new right to lay down railroad tracks, or any new exclusive privileges or franchises, but it may be passed to regulate and control the right to lay down tracks previously existing, or to give new privileges or franchises, provided they be not exclusive." (Id., 338.) And while this act is broad in its provisions and may, in the execution of its authority, be productive of injuries and attended with dangers to

the owners of property fronting upon the streets, it cannot be held for those reasons alone, to be in violation of this provision of the Constitution. For by section 8 it has provided that compensation. shall be made to the owners of private property injured in this manner, and that their property shall not be taken or appropriated to the uses of the railway without compensation to them for the value of the property, rights or privileges which may be so appropriated.

The act does not propose to grant to the corporation any exclusive privilege, immunity or franchise, but it has reserved to the legislature the power to repeal or amend it, which power is not consistent with the existence of an exclusive right or privilege in the corporation. Nor did it profess to confer any such privilege or franchise. And that the exercise of authority contained in the act may be attended with the exclusion of other corporations or individuals from the enjoyment of the same privileges while they may exist and be maintained by the defendant is not an infraction of this provision of the Constitution as that was considered and construed in *Matter of Union Ferry Company* (98 N. Y., 139).

Neither can the act be held to be a violation of either of these prohibitions of the Constitution, so far as it may waive a forfeiture of the corporate rights of the defendant, arising out of its neglect to construct and put in operation the portions of its road required to be constructed within the periods of time specified in the previous laws relating to this company. Upon that subject it was said, in *Matter of Elevated Railroad Company (supra)*, that " a bill may be passed waiving a forfeiture of corporate rights. Such a bill would confer no new rights upon the corporation, but would simply be a surrender or waiver by the sovereign of its right to claim the forfeiture. A bill may be passed to extend the time within which corporate rights may be exercised. Such a bill would give no new substantial rights, but would simply extend the time within which rights previously granted could be exercised."

To avoid the effect of this authority the act of 1873 must be so construed as to vest the defendant with the right or power to construct and maintain railways, only upon the conditions mentioned in this and the other acts amendatory of it. But whether this act should be so construed or not, it is not necessary now to decide. Its language may be susceptible of such a construction, or it may

perhaps be more appropriately held to have vested the defendant with the right to construct and operate the railways, restricting its authority to do so upon the condition that it previously should perform other acts mentioned and defined by the act.

It did declare in section 6 of the act that, before entering upon the construction of the work herein authorized, "said company shall prove to said board of engineer-commissioners that the full amount of the capital stock of said company has been subscribed in good faith by *bona fide* subscribers, and ten per cent thereof paid in in cash, or other financial arrangements made by said company to insure the completion of said work as herein authorized. And upon its so appearing to said engineer-commissioners, they shall issue to said company a certificate to that effect, under their hands and seals, which certificate shall be executed in duplicate and one returned to said company, and one shall be filed with the mayor of the city of New York." Section 2 of the same act provided for the selection and appointment of a board of three engineer commissioners to have the oversight, inspection and control of the performance of the work. And a further condition was imposed by section 6 upon the company before the work should be commenced, that a bond with sufficient sureties should be given, conditioned to pay, or cause to be paid, to the city, or any or all persons or corporations owning lands along the line of the road, any and all damages or injury to the property of the city or persons or corporation which they should sustain by reason of the construction of the road. The penalty of this bond was required to be not less than $250,000, nor more than $500,000. By chapter 503 of the Laws of 1874 the name of the company was changed to that of the Broadway Underground Railway Company. And section 3 of this act only permitted the excavation to be made and the railway to be laid, whenever the company should prove, to the satisfaction of the engineer-commissioners, that the whole capital stock of the company had been subscribed, or other financial arrangements made, for completing the first section within three years after the passage of this act. Upon such proof being made the commissioners were required to execute a certificate in duplicate which should be filed, and the company was then authorized to proceed with the work of construction.

This last act did not require the bond mentioned in the preceding

act to be filed before the work could be undertaken, but, by implica-
tion, permitted the work to be commenced only when the stock should
be subscribed or some other financial arrangement should be made for
completing the first section of the work within three years, and the
certificate mentioned should be made and filed. A further amend-
ment was made by chapter 454 of the Laws of 1881, changing the
name of the company again and making it the Broadway Under-
ground Railway Company. And this act, amending section 3 of
the act of 1874, permitted the work to be commenced upon proof
being made to the commissioners that the whole capital stock of the
company had been subscribed or other financial arrangements made.
for completing the first section of the railway within five years.
from July 1, 1881. Upon such proof being made the commissioners.
were required to execute duplicate certificates, one of which was to
be filed as the previous law had provided that should be done. By
section 3 of chapter 312 of the Laws of 1886, which was enacted
after the name of the company had been changed to that of the
New York Arcade Railway Company, it was further provided that.
" the work of construction of the railways of such company may
be begun and continued when the board of engineer commissioners.
shall have made a certificate in duplicate that such company have
made suitable and reliable financial arrangements to insure the com-
pletion of such first section, and shall have delivered one of such
certificates to such company, and filed the other with the mayor of
the city of New York." A further provision is contained in the
same section relating to the execution and filing of a bond, as that.
was directed by the act of 1873, but in a largely increased amount.
But no allegation has been made in the complaint of any failure to
execute, deliver or file this bond.

The complaint has averred, however, that no proof was made to
the commissioners that the company had made any financial arrange-
ments to insure the completion of so much of the work as was
mentioned in the act, and that no certificate had been made to that
effect by the board of engineer commissioners, and they were further
restricted from making the certificate until the company should have.
at least $3,000,000 in its treasury, applicable to the work of con-
struction of its railways. The language of so much of this section
as has been given, evinces the intention of the law to be that the

work of constructing the railways should not commence until the certificate already referred to should be obtained and filed. And by the earlier acts these certificates could not be made or obtained without proof of the fact, which could not otherwise be within the knowledge of the commissioners, that suitable and reliable financial arrangements had been made to insure the completion of the first section of the railway. This section was, in effect, prohibitory of any work being done until compliance should be made with this provision, and the complaint has alleged a failure on the part of the company to comply with this requirement. As to this matter it has been stated " that the said defendant company did not prove to the board of engineer commissioners that the full amount of capital stock of the said company had been subscribed in good faith by *bona fide* subscribers, and ten per cent thereof paid in cash, or that other financial arrangements had been made by the said company to secure the completion of said work as authorized by said act; that the said engineer commissioners never made a certificate to that effect." * * * " That the defendant company did not prove, as it was authorized to do by chapter 503 of the Laws of 1874, to the board of engineer commissioners, that the whole capital stock had been subscribed, or other financial arrangements made for completing the first section of its road, as said first section is defined in chapter 503 of the Laws of 1874, within three years after the passage of said act." * * * " Nor did the defendant make, or attempt to make, any proof to the board of engineer commissioners prior to May 21, 1877, or at any time, that its whole capital stock had been subscribed, or that other financial arrangements had been made by it for completing said first section of its railway; nor did the said board of engineer commissioners make or execute prior to May 21, 1877, or at any other time, a certificate, in duplicate or otherwise, to that effect. Nor was any such certificate filed as directed in said chapter 185 of the Laws of 1873, either prior to May 21, 1877, or at any time afterwards."

By the failure to make the proof and obtain and file this certificate, which has been admitted by the demurrer, as that admits all the substantial allegations of the complaint, the defendant is shown to have been so far in default as to have had no right, at the time when the suit was commenced, to begin the work or lay down its railway.

The allegations, it is true, are more particularly by the complaint directed to the provisions contained in the acts of 1873 and 1874, but in addition to the averments bringing the defendant's default within those acts, it has been further added that neither was the proof made nor the certificate obtained or filed at any time, either before the days mentioned in the complaint or at any time afterwards. And it thereby alleges a default on the part of the defendant within the language of section 3 of the act of 1886. By that act the company had no authority to commence the construction of its railways until the certificate mentioned in it had been obtained and filed. And that, under the preceding law, could not be obtained without the proof being made that the company had made suitable and reliable financial arrangements to insure the completion of the first section of the work. Without this certificate it could not go on. And as it had not been obtained and filed in any form, either literally, substantially, or otherwise complying with these acts, it was divested, certainly for the time being, of the power of entering upon the performance of the work or the construction of the first section of its railway.

On this ground the plaintiffs appear to have been entitled to maintain the action and enjoin the commencement or prosecution of this work. To escape that result it would be necessary for the defendant to make proof of the fact that it had provided the financial means to go on and construct and complete the first section of its work. It did not do that. The defendant made default in the observance of this restriction of the statute. And as long as it shall continue in default in this manner it has no right to proceed with the prosecution of this work, even though in other respects it might be free from legal obstacles.

It is not necessary to decide whether, by chapter 775 of the Laws of 1867, the company had ceased to exist because of its omission to commence the construction of its road within five years after its incorporation. Whether it failed to commence operations within the period of one year after the corporation had been created is not a fact made to appear by the complaint. For that reason it cannot be held that the case is within the statute declaring that the defendant's corporate power should cease if it failed to commence the

transaction of its business within one year from the date of its incorporation. (2 R. S. [6th ed.], 391, § 6.)

There are other objections which have been urged against the right of the defendant to proceed with the construction of its work besides those which have been considered. It is not necessary to discuss those objections. Neither is it necessary definitely to decide whether, under the facts averred in the complaint, the company may not yet be able to proceed with the construction and operation of its railway. For the present disposition of the case it is sufficient to hold, and that seems plainly to result from the language of the statutes, that, as it has failed to make the proof and obtain the engineer-commissioners' certificates as to its financial ability to complete the first section of the work, it is not in the condition in which the law has required that it shall place itself to commence excavating the streets and laying its railways. On this ground the judgment from which the appeal has been taken should be reversed, and a judgment entered overruling the demurrer to the plaintiff's complaint, with liberty to the defendant to answer in twenty days after notice of this decision, and on payment of the costs of the demurrer and the costs and disbursements of this appeal.

Brady, J., concurred in the result.

Patterson, J.:

I concur in the conclusion that the judgment must be reversed, but I do not wish to be understood as expressing any opinion concerning the constitutionalty of the act of 1873, so far as it extends the franchise or grants new powers to the defendant corporation.

Judgment reversed; judgment entered as directed in opinion.